UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MURIEL FISK SAPIEN,

　　　　　　　　Plaintiff,

　　　v.

COMMISSIONER OF SOCIAL
SECURITY,

　　　　　　　　Defendant.

Case No.  1:24-cv-01216-HBK

ORDER REMANDING CASE TO
COMMISSIONER OF SOCIAL SECURITY [1]

(Doc. 13, 18)

Muriel Fisk Sapien ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits under the Social Security Act.  (Doc. 1).  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.  (Doc. 13, 18).  For the reasons stated, the Court remands the matter to the Commissioner of Social Security for further administrative proceedings.

## I.　　JURISDICTION

Plaintiff protectively filed for disability insurance benefits on July 29, 2021, alleging an

---

[1] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1).  (Doc. 9).

onset date of September 11, 2020.  (AR 288-92).  Benefits were denied initially (AR 74-93, 135-39), and upon reconsideration (AR 94-134, 146-51).  Plaintiff appeared before an Administrative Law Judge ("ALJ") on June 20, 2023.  (AR 37-73).  Plaintiff was represented by counsel and testified at the hearing.  (*Id*.).  The ALJ issued an unfavorable decision (AR 18-36), and the Appeals Council denied review (AR 5-10).  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## II.    BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 64 years old at the time of the hearing.  (*See* AR 39).  She has a bachelor's degree.  (AR 44).  She lives with her boyfriend.  (AR 43).  Plaintiff has work history as a project engineer and engineer.  (AR 44-51, 66).  Plaintiff testified she can no longer do her previous work because of her back and neck pain, scoliosis, limitations in walking, and anxiety.  (AR 47-50, 56-57, 72).  She reported she can be on her feet for ten minutes before she must sit down and rest for ten minutes, she walks 15 minutes outside 3 times a week, she has trouble focusing and gets confused, and she cannot lift more than 10 pounds.  (AR 53-55, 60-62).  Plaintiff testified that she worked as long as she could "until [she] just couldn't," and interviewed for jobs but she is "limited" and never got hired.  (AR 59-60).

## III.    STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### IV.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work

3

activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*,

4

180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity (SGA) since September 11, 2020, the alleged onset date.  (AR 23).  At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine with history of laminectomy at L4-5 in 1995; dextroscoliosis; exogenous obesity; status post bariatric surgery, and vertigo.  (AR 23).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  (AR 25).  The ALJ then found that Plaintiff has the RFC to

> perform medium work as defined in 20 CFR 404.1567(c) except the claimant is frequently able to climb ramps and stairs and is never able to climb ladders, ropes, and/or scaffolds.  The claimant is frequently able to balance, crawl, crouch, kneel and stoop.

(AR 26).  At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a project engineer.  (AR 29).  In the alternative, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cleaner II, hand packager, and machine packager.  (AR 29-30).  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from September 11, 2020, through the date of the decision.  (AR 31).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act.  (Doc. 1).  Plaintiff raises the following issue for this Court's review: whether the ALJ properly considered the medical opinion of Steven Stoltz, M.D.  (Doc. 13 at 9-16).

////

## VII.    DISCUSSION

### A. Medical Opinions

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to,

6

explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence.  *Id.* at 792.  This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings."  *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

Plaintiff argues the ALJ improperly evaluated the January 2022 medical opinion of consultative examining physician Scott Stoltz, M.D., FACP.  (Doc. 13 at 9-13).  Dr. Stoltz examined Plaintiff and opined that she has the ability to walk and stand a maximum of 4 to 6 hours in an 8-hour workday, has no sitting restrictions, can lift and carry a maximum of 10 pounds occasionally, can do frequent but not continuous activities, has no manipulative restrictions, can climb stairs and ramps occasionally, and can never climb ladders or scaffolding.  (AR 685-86).  The ALJ found Dr. Stoltz's opinion was "less persuasive" than the state agency consulting opinions of M. Amando, M.D. and K. Mohan, M.D.  (AR 28).

The entirety of the ALJ's findings arguably explaining his findings as to the persuasiveness of Dr Stoltz's opinion was that "the prior administrative medical findings of Dr. Amando and Dr. Mohan were supported by explanation with reference to the medical record. Those findings were consistent with the generally normal examination findings and treatment history, but also the findings of Dr. Stoltz."  (AR 28).  Presumably in support of this finding the ALJ cited Dr. Stoltz's findings on examination, as well string citing "normal examination

7

findings" on two 2019 treatment visits for a right forearm lesion (AR 450, 456), a 2019 treatment visit for fatigue (AR 459), a 2019 treatment visit for abdominal pain (AR 489), and a January 2020 treatment visit to establish as a patient and complaining of flu-like symptoms (AR 578). Plaintiff argues the ALJ harmfully erred by failing to consider the supportability and consistency factors pursuant to the revised regulations. (Doc. 13 at 11). The Court agrees.

When considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Brown-Hunter*, 806 F.3d at 495 (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. In addition, as noted above, the Ninth Circuit clarified that under the new regulations for considering medical evidence, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate … how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted).

As to the consistency factor, Defendant argues the ALJ properly reasoned that "in contrast to Dr. Stoltz' opinion, the findings of Drs. Amado and Mohan 'were consistent with the generally normal examination findings and treatment history.'" (Doc. 18 at 3). However, a plain reading of the ALJ's findings indicates that he found the opinions of Dr. Amado and Dr. Mohan were consistent with record, <u>and</u> <u>their</u> findings were consistent with the findings of Dr. Stoltz, which speaks directly to the consistency factor as applied to the persuasiveness of Drs. Amado and Mohan as opposed to any explanation of why Dr. Stoltz's opinion was less consistent and therefore less persuasive than the state agency opinions. Moreover, even if the Court were to

consider the cited "normal" examination findings as purportedly consistent with the state agency opinions and the "findings" of Dr. Stoltz, the treatment records string cited by the ALJ are all dated before the September 11, 2020 alleged onset date of disability, and as detailed above, the records do not document treatment for back pain or scoliosis, the severe impairments at issue here.

Finally, the ALJ fails to reference any specific objective or clinical medical source evidence from the overall record that is inconsistent with the precise limitations opined by Dr. Stoltz, nor does the ALJ offer any explanation as to how any of the specific limitations opined by Dr. Stoltz, including limitations on standing, walking, lifting, and carrying, are inconsistent with medical source evidence from the relevant period.  (*See* AR 28).  As noted by Plaintiff, the ALJ failed to consider probative objective evidence from 2022,[2] including, most notably, the results of a November 7, 2022 MRI of the lumbar spine that noted, *inter alia*, severe dextroscoliosis, moderate canal stenosis at L3-4, and multiple levels of neural stenosis, severe at bilateral L3-4, right L4-5, right L5-S1, and moderate at left L 1-2 levels.  (Doc. 13 at 14 (citing AR 966)); *see also* AR 989-90 (observing severe scoliosis and tenderness pointing to right SI area and noting in the "treatment plan" that Plaintiff could get a spine injection and use a cane or walker)).  For these reasons, to the extent that he considered the consistency factor, the ALJ's findings are not supported by substantial evidence.

As to the supportability factor, "the more relevant the objective medical evidence and supporting explanations *presented by a medical source* are to support" the medical opinion, the more persuasive the medical opinion will be.  20 C.F.R. § 416.920c(c)(1) (emphasis added).  Defendant argues the ALJ "properly concluded that Dr. Stoltz's opinion was less persuasive

---

[2] It is somewhat unclear to the Court whether Plaintiff intended to raise the ALJ's failure to consider 2022 "objective evidence" in the record as a separate issue for the Court's consideration apart from the assertion of error in considering Dr. Stoltz's opinion. (*See* Doc. 13 at 13-16).  When the ALJ improperly ignores significant and probative evidence in the record favorable to a claimant's position, the ALJ "thereby provide[s] an incomplete residual functional capacity determination."  *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012); *see also Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).  Regardless, in light of the Court's finding that remand is necessary to reconsider the medical opinion evidence, and direction that the ALJ should conduct a new sequential analysis, the Court declines to consider this argument in detail here.

because it lacked support from his own examination." (Doc. 18 at 4). As part of the opinion analysis, the ALJ did summarize Dr. Stoltz's "normal" examination findings including excellent range of motion of her spine, normal range of motion of other joints, negative straight leg raise test, 5/5 motor strength with good tone, normal sensation and reflexes, normal neurological examination, and a slight limp. (Doc. 28, 684-85). However, as noted by Plaintiff, the ALJ appeared to overlook Dr. Stoltz's observations that Plaintiff had back pain with knee extensions while seated, and "severe scoliosis of the lumbosacral spine with a very prominent left pelvic tilt and prominence compared to the right." (AR 684). Similarly, while not acknowledged by the ALJ, Dr. Stoltz reviewed primary care notes from 2021 and radiology reports from 2021 that showed "severe dextroscoliosis, severe degenerative changes and even mild to moderate degenerative changes of the cervical spine with grade I anterolisthiasis of C4-C5 and her COBB angle was 41 degrees at the lumbosacral spine," and Dr. Stoltz noted in his functional assessment that Plaintiff "certainly has radiological evidence for her issues as well as findings on [Dr. Stoltz's] physical exam with pelvic tilt and visible dextroscoliosis of the lower spine." (AR 681, 685). Thus, to the extent he explicitly considered the supportability factor, the ALJ failed to offer the requisite explanation, pursuant to the revised regulations, as to how he considered the objective evidence presented by Dr. Stoltz in determining his opinion was less persuasive. *Woods*, 32 F.4th at 792; *see also Brown-Hunter*, 806 F.3d at 495 ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").

Based on the foregoing, the ALJ's finding that Dr. Stoltz's opinion was "less persuasive" is not supported by substantial evidence. On remand, the ALJ should reconsider Dr. Stoltz's medical opinion, along with all relevant medical opinion evidence.

**B. Remedy**

Plaintiff argues the Court should remand to the Social Security Administration for the payment of benefits, or in the alternative, remand for further administrative proceedings. (Doc. 13 at 16). The decision whether to remand for further proceedings or reverse and award benefits

is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered the medical opinion evidence, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. On remand, the ALJ should reevaluate the medical opinion evidence. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. 13) is GRANTED.

2. Defendant's Cross Motion for Summary Judgment (Doc. 18) is DENIED.

3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the

11

Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion within thirty (30) days.

5. The Clerk shall enter judgment in favor of Plaintiff, terminate any motions and deadlines, and close this case.

Dated:    March 31, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

12